STEPHEN P. BERZON (SBN 46540)
JONATHAN WEISSGLASS (SBN 185008)
STACEY M. LEYTON (SBN 203827)
LAURA S. TRICE (SBN 284837)
ALTSHULER BERZON LLP
177 Post Street Suite 300
San Francisco, CA 94108
Telephone:  (415) 421-7151
Facsimile:  (415) 362-8064
sberzon@altshulerberzon.com
jweissglass@altshulerberzon.com
sleyton@altshulerberzon.com
ltrice@altshulerberzon.com

*Attorneys for Defendants International Union
of Operating Engineers, James T. Callahan,
and Vincent Giblin*

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SLACK, *et al.*, | No. CV 13-05001-EMC |
| Plaintiffs, | |
| v. | **NOTICE OF MOTION AND MOTION TO DISMISS AND, IN THE ALTERNATIVE, TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| INTERNATIONAL UNION OF OPERATING ENGINEERS, *et al.*, | |
| Defendants. | Date:   June 19, 2014 |
| | Time:  1:30 p.m. |
| | Place:  Courtroom 5, 17th Floor |
| | Judge:  Hon. Edward M. Chen |

**NOTICE OF MOTION AND MOTION TO DISMISS AND, IN THE ALTERNATIVE, TO**

**STRIKE UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6), 12(b)(1), AND 12(f)**

Please take notice that on June 19, 2014, at 1:30 p.m., before the Honorable Edward M. Chen, in Courtroom 5, located at 450 Golden Gate Avenue, 17th floor, San Francisco, California, Defendants International Union of Operating Engineers, Vincent Giblin, and James T. Callahan (collectively, "IUOE Defendants"), and each of them, will move to dismiss Plaintiffs' First Amended Complaint.

This motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(1), and 12(f).  IUOE Defendants move to dismiss Plaintiffs' claim against them pursuant to Rule 12(b)(6) on the ground that the First Amended Complaint fails to state a claim against IUOE Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 *et seq.*  IUOE Defendants also move to dismiss the claim against Defendant James T. Callahan pursuant to Rule 12(b)(1) on the ground that Plaintiffs lack standing to assert claims against him.   Finally, in the event that the Court does not dismiss the claim against IUOE Defendants in its entirety pursuant to Rule 12(b)(6) and 12(b)(1), IUOE Defendants move to strike Plaintiffs' request for injunctive relief as it pertains to IUOE Defendants on the ground that Plaintiffs lack standing to seek injunctive relief.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the complete files and records in this action, and on such other argument or evidence as may be presented at or before the time of hearing.

Dated: April 24, 2014                            Respectfully submitted,

                                                 STEPHEN P. BERZON
                                                 JONATHAN WEISSGLASS
                                                 STACEY M. LEYTON
                                                 LAURA S. TRICE

                                                 By:   /s/  Stacey Leyton
                                                      Stacey Leyton

                                                 *Attorneys for Defendants International Union of Operating Engineers, James T. Callahan, and Vincent Giblin*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.   THE RICO CLAIM AGAINST IUOE DEFENDANTS SHOULD BE DISMISSED
     PURSUANT TO RULE 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     A.   Plaintiffs Have Not Plausibly Alleged Any Predicate Acts Of Racketeering . . . . . . . 6

          1.   Plaintiffs' conclusory allegations of extortion fail to satisfy the standard
               of *Iqbal* and *Twombly* and cannot support plausible Hobbs Act
               violations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          2.   Plaintiffs' conclusory allegations cannot support a plausible predicate act of
               unlawful monetary transactions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          3.   The alleged predicate act of embezzlement of union assets is
               unsupported by plausible factual allegations and lacks a cognizable
               legal theory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          4.   The alleged predicate act of embezzlement from employee benefit plans fails
               because Plaintiffs have identified no plan employee, pleaded no plausible facts,
               and rely on a defective legal theory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     B.   Plaintiffs Have Not Alleged A Pattern Of Racketeering . . . . . . . . . . . . . . . . . . . . . . 14

     C.   Plaintiffs Have Not Alleged Operation Or Management Of A RICO
          Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     D.   Plaintiffs Lack Statutory Standing To Bring A RICO Claim Against Current
          IUOE General President Callahan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

II.  THE CLAIM AGAINST DEFENDANT CALLAHAN SHOULD BE DISMISSED
     PURSUANT TO RULE 12(b)(1) BECAUSE NO PLAINTIFF HAS ALLEGED AN INJURY
     TRACEABLE TO HIS CONDUCT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

III. PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF SHOULD BE
     STRICKEN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adams-Lundy v. Association of Professional Flight Attendants,*
    844 F.2d 245 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Amparan v. Plaza Home Mortgage, Inc.,*
    678 F. Supp. 2d 961 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 8

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Blake v. Dierdorff,*
    856 F.2d 1365 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Blantz v. California Department of Corrections & Rehabilitation,*
    727 F.3d 917 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Boyle v. United States,*
    556 U.S. 938 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Canyon County v. Syngenta Seeds, Inc.,*
    519 F.3d 969 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Carbo v. United States,*
    314 F.2d 718 (9th Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Century Aluminum Co. Security Litigation,*
    729 F.3d 1104 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Chandler v. State Farm Mutual Automobile Insurance Co.,*
    598 F.3d 1115 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 16

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.,*
    758 F.Supp.2d 153 (E.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Daniels-Hall v. National Education Association,*
    629 F.3d 992 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Diaz v. Gates*,
    420 F.3d 897 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Doe v. Holy See*,
    557 F.3d 1066 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Figueroa Ruiz v. Alegria*,
    896 F.2d 645 (1st Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*H.J. Inc. v. Northwest Bell Telegraph Co.*,
    492 U.S. 229 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14, 15

*Hemi Group, LLC v. City of New York*,
    559 U.S. 1 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16, 18

*Howard v. Blue Ridge Bank*,
    371 F.Supp.2d 1139 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ibrahim v. Department of Homeland Security*,
    669 F.3d 983 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Lacey v. Maricopa County*,
    693 F.3d 896 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lee v. State of Oregon*,
    107 F.3d 1382 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

*Mendoza v. Zirkle Fruit Co.*,
    301 F.3d 1163 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*National Committee of Reform Party v. Democratic National Committee*,
    168 F.3d 360 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Nelsen v. King County*,
    895 F.2d 1248 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

iv

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Oscar v. University Students Co-op. Association*,
    965 F.2d 783 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Pette v. International Union of Operating Engineers*,
    2013 WL 5573043 (C.D. Cal. Oct. 9, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 12

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15

*Roger Whitmore's Automobile Services, Inc. v. Lake County*,
    424 F.3d 659 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sparling v. Hoffman Construction Co.*,
    864 F.2d 635 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United Brotherhood of Carpenters & Joiners v. Building & Construction Trades Department*,
    911 F. Supp. 2d 1118 (E.D. Wash. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

*United States v. Andreen*,
    628 F.2d 1236 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Brill*,
    350 F.2d 171 (2d Cir. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. International Brotherhood of Teamsters*,
    14 F.3d 183 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. McFall*,
    558 F.3d 951 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Rogers*,
    321 F.3d 1226 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Walsh v. Nevada Department of Human Resources*,
    471 F.3d 1033 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1

**FEDERAL STATUTES**

2 U.S.C. §437 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

2 U.S.C. §441b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. §1951 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. §1956 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. §1957 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

18 U.S.C. §1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §1961(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. §1961(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. §1961(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. §1962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 15

18 U.S.C. §1964 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

18 U.S.C. §664 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

29 U.S.C. §501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 12, 13

**STATE STATUTES**

Cal. Civ. Pro. Code §425.16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cal. Bus. Profs. Code §17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**FEDERAL REGULATIONS**

11 C.F.R. §114.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11 C.F.R. §114.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**FEDERAL RULES**

Fed. R. Civ. P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 16, 18

1

## INTRODUCTION

Plaintiffs' 126-page First Amended Complaint focuses on allegations of corruption, embezzlement, and fiduciary breaches within International Union of Operating Engineers Local 3 ("Local 3") and its employee benefit funds.  The Defendants bringing this motion – the International Union of Operating Engineers ("IUOE"), former IUOE General President Vincent Giblin, and current IUOE General President James T. Callahan (collectively, "IUOE Defendants") – are neither officers nor fiduciaries of Local 3 or its trusts, and IUOE is a separate legal entity from Local 3.  These Defendants therefore have nothing to do with the vast majority of Plaintiffs' claims.  Indeed, despite their otherwise sweeping allegations, Plaintiffs have reduced their case against IUOE Defendants to a single claim based *solely* on a single, conclusory allegation: that IUOE Defendants extorted, or directed others to extort, political contributions from certain local union employees.

Based on this single allegation, Plaintiffs contend that IUOE Defendants were engaged in a scheme of extortionate racketeering, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961 *et seq.*  But this far-fetched claim is founded entirely on the type of threadbare, conclusory allegations the Supreme Court rejected in *Twombly* and *Iqbal*.  Plaintiffs identify no threats, or other attempts to instill or exploit fear, by *any* individual, directed at *any* local union employee, much less directed at any named Plaintiff or made or directed by IUOE Defendants.  Plaintiffs' theories of racketeering activity also suffer from fatal legal defects.  And Plaintiffs have no standing to sue current IUOE General President James T. Callahan or to seek injunctive relief.  Plaintiffs thus come nowhere close to stating a viable claim for relief, and their claim against IUOE Defendants should be dismissed.

## BACKGROUND

This is the third case that Plaintiffs' counsel have brought on behalf of a handful of local union members against large groups of defendants including IUOE and its officers.  In each case, Plaintiffs' counsel have filed putative class actions raising numerous claims against a plethora of defendants.  *See Pette v. IUOE et al.*, C.D. Cal. Case No. 12-9234-DDP-VBK (Dkt. 67) (Second Amended Complaint asserting eight claims against 43 defendants); *Salas v. IUOE et al.*, C.D. Cal. Case No. 12-10506-

---

1

1    DDP-VBK (Dkt. 167) (Fourth Amended Complaint asserting 18 claims against 26 defendants).[1]  The

2    earlier-filed cases pending before United States District Court Judge Dean Pregerson have included

3    numerous far-fetched allegations.  *See, e.g.*, *Pette* Dkt. 67 ¶136 (alleging that DOL officials, "perhaps

4    even Hilda Solis herself," were "derailing" investigations involving IUOE); *Pette* Dkt. 67-1 ¶¶187-88

5    (alleging threats to kill union members and ties to mafia); *id.* at 75 (referring to current NLRB General

6    Counsel and former NLRB Member Richard Griffin as "Consigliore Griffin").

7         In this case, Plaintiffs are five members of International Union of Operating Engineers Local 3,

8    a local union representing operating engineers in California, Utah, Nevada, Hawaii, and Pacific Rim

9    islands.  FAC ¶¶7-11, 19.  Plaintiffs have asserted 20 claims against approximately 50 Defendants,

10   most of whom are affiliated with Local 3 or its employee benefit funds.  Plaintiffs' First Amended

11   Complaint focuses primarily on allegations that a "cabal" of local union leaders engaged in self-

12   dealing, diverted Local 3 and trust assets for personal benefit, and otherwise breached their fiduciary

13   duties to local union members and ERISA trust beneficiaries.  FAC ¶1.

14        By contrast, IUOE is a separate legal entity from Local 3, and IUOE Defendants hold no

15   position, fiduciary or otherwise, within Local 3 or any of its employee benefit trusts.  Of the five

16   named Plaintiffs, only Plaintiff David Slack asserts any claim against IUOE Defendants (on behalf of

17   himself and a proposed class of local union and trust employees).  FAC at 82; *id.* ¶¶390, 414, 422.  Mr.

18   Slack is alleged to be a retired union member and former employee of Local 3.  *Id.* ¶7.  He alleges that

19   non-clerical Local 3 employees, including himself and Plaintiff Clyde Eli, were "told and/or made

20   otherwise aware that if they wanted to serve in their positions, they had no choice but to contribute" to

21

22

23

24

25

26        [1] On October 9, 2013, the court granted defendants' motions to dismiss the Second Amended
     Complaint in *Pette* and denied leave to amend the RICO and aiding and abetting claims. *Pette* Dkt.
27   151, 2013 WL 5573043.  Plaintiffs' counsel have filed a Third Amended Complaint as well as a
     motion for reconsideration, which remains pending at this time. *Pette* Dkt. 155, 157.  Motions to
28   dismiss the Fourth Amended Complaint are pending in *Salas*.  *See Salas* Dkts. 175, 177, 179, 181, 182.

1    IUOE's political action fund (referred to as "EPEC" or the "President's Club"). *Id.* ¶105.[2/]  Mr. Slack

2    asserts, without the support of plausible factual allegations, that former IUOE General President

3    Vincent Giblin directed others to use threats of termination or other economic consequences to extort

4    contributions from non-clerical local union employees, and that James Callahan continued this practice

5    when he became IUOE General President in 2011. *Id.* ¶¶13, 108, 114.  IUOE Defendants are named

6    *solely* for their alleged role in the unlawful solicitation of political contributions from Mr. Slack and

7    other employees of local unions and affiliated entities. *Id.* ¶¶16, 117.

8         Based on this single allegation, Mr. Slack initially brought four claims against IUOE

9    Defendants: a federal RICO claim (claim 16) and three state law claims for breach of common law

10   fiduciary duty (claim 10), conversion (claim 17), and violations of the California Unfair Competition

11   Law, Cal. Bus. & Profs. Code §17200 *et seq.* (claim 18).  On April 7, 2014, IUOE Defendants moved

12   to strike the three state law claims pursuant to California's anti-SLAPP statute, Cal. Civ. Pro. Code

13   §425.16, on grounds that the claims were based on constitutionally protected solicitation of political

14   contributions and that Plaintiffs could not show a probability of prevailing on their claims, as required

15   under California law.  Dkt. 68.  In response, Plaintiffs entered into a stipulation for dismissal of all of

16   the state law claims against IUOE Defendants with prejudice, which this Court granted on April 18,

17   2014.  Dkts. 95, 97.

18        Plaintiffs' dismissal of their state law claims resembles the course of litigation in the *Pette* and

19   *Salas* cases, where Plaintiffs' counsel have repeatedly amended the pleadings when faced with IUOE

20   Defendants' reasons for dismissal.  In *Salas*, for example, the plaintiffs have managed to defer a court

21   ruling on the merits of their claims for over a year while filing no less than four amendments to their

22   initial complaint.  *See Salas* Dkt. 1 (Compl., 12/7/12); Dkt. 58 (First Amended Compl., 4/19/13); Dkt.

23   82 (Second Amended Compl., 7/22/2013); Dkt. 95 (Third Amended Compl., 9/23/13); Dkt. 167

24   (Fourth Amended Compl. 2/21/2014); *see also* IUOE Defs.' Opp. to Mot. for Leave to File Fourth

25   _____

26        [2/]  Although Plaintiff Clyde Eli is alleged to have made political contributions under "threat of
     adverse economic consequences," FAC ¶105, he does not assert any claims against IUOE Defendants
27   and is not alleged to be a member of either the proposed Nationwide Employee Class or the proposed
     Local 3 Employee Sub-Class. *Id.* ¶179.  Presumably this is because he was not employed by Local 3
28   within the four years prior to the filing of this action, as required by the class definitions. *Id.* ¶¶176-77.

Amended Compl. at 1-4, *Salas* Dkt. 148 (describing history of amendments). Each time the plaintiffs amended their complaint, they made significant changes to the claims asserted and defendants named in those claims, at times dropping one claim only to reassert it in a later amendment under a different theory or based on different allegations. *See Salas* Dkt. 148 at 3-4. Most recently, the *Salas* plaintiffs asserted new, unfounded allegations of embezzlement in a 111-page declaration filed in opposition to IUOE Defendants' Rule 12(b)(6) motion to dismiss. *Salas* Dkt. 198 & 198-1.

In this case, the stipulated dismissal of the state law claims has (for now) limited Plaintiffs' case against IUOE Defendants to a single RICO claim, brought solely by Plaintiff Slack, and based solely on the allegation that IUOE Defendants extorted, or directed others to extort, political contributions from non-clerical local union employees under threat of job loss or other adverse economic consequences. Because this claim is unsupported by plausible factual allegations and suffers from fatal legal defects, it should be dismissed.

## LEGAL STANDARDS

To withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory legal statements are not accepted as true, and "naked assertions devoid of further factual enhancement" do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and alteration omitted). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint is dismissed. *Id.* at 679.

Because standing "pertain[s] to federal courts' subject matter jurisdiction," it is "properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). A challenge to standing under Rule 12(b)(1) "may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). If the challenge is facial, the "challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction," *id.*, and the Court assumes the well-pleaded factual allegations to be true. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

1

## ARGUMENT

2

**I.     THE RICO CLAIM AGAINST IUOE DEFENDANTS SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6)**

3

4

RICO's purpose is "attack[ing] the infiltration of organized crime and racketeering into

5

legitimate organizations." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (internal quotation

6

marks omitted).  Given the "quasi-criminal" nature of a civil RICO action, the "mere assertion" of a

7

civil RICO claim "has an almost inevitable stigmatizing effect on those named as defendants."

8

*Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).  For this reason, and "[i]n fairness to

9

innocent parties," courts typically "should strive to flush out frivolous RICO allegations at an early

10

stage of the litigation."  *Id.*  Similarly, because of the RICO statute's "powerful effect on potentially

11

innocent defendants who face the threat of treble damages, and the concomitant potential for abuse of

12

RICO's potent provisions," courts are "particularly mindful" of the pleading standards set forth in

13

*Iqbal* and *Twombly* "in the context of a civil RICO claim."  *Curtis & Associates, P.C. v. Law Offices of*

14

*David M. Bushman, Esq.*, 758 F.Supp.2d 153, 166-67 (E.D.N.Y. 2010), *aff'd sub nom. Curtis v. Law*

15

*Offices of David M. Bushman, Esq.*, 443 F.App'x 582 (2d Cir. 2011); *cf. Oscar v. Univ. Students Co-*

16

*op. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992) ("RICO was intended to combat organized crime, not to

17

provide a federal cause of action and treble damages to every tort plaintiff."), *abrogated on other*

18

*grounds by Diaz v. Gates*, 420 F.3d 897, 898-900 (9th Cir. 2005).

19

Plaintiff Slack asserts a RICO claim against IUOE Defendants under 18 U.S.C. §1962(c),

20

which makes it unlawful "for any person employed by or associated with any enterprise . . . to conduct

21

or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

22

racketeering activity."  18 U.S.C. §1962(c).  As discussed below, Mr. Slack's allegations of

23

racketeering fall far short of the plausibility standard established in *Iqbal* and *Twombly*; his allegations

24

of embezzlement rest on fatally flawed legal theories; and he lacks RICO standing with respect to

25

current IUOE General President Callahan.  Indeed, his allegations of "forced" political contributions

26

have nothing to do with "racketeering" and should be addressed, if at all, by the Federal Election

27

Commission.  Plaintiff Slack should not be permitted to maintain a quasi-criminal claim based on

28

mere conclusory allegations and flawed legal theories.  Accordingly, the claim should be dismissed.

1

**A.      Plaintiffs Have Not Plausibly Alleged Any Predicate Acts Of Racketeering**

2       To state a claim under 18 U.S.C. §1962(c) against a particular defendant, the complaint must

3 plausibly allege two or more predicate acts *by that defendant* that amount to a pattern of racketeering

4 activity.  *See* 18 U.S.C. §1961(5); *Blake v. Dierdorff*, 856 F.2d 1365, 1370-71 (9th Cir. 1988)

5 (dismissing claim against defendants alleged to have committed one predicate act).  "Racketeering

6 activity" includes predicate acts indictable under specified federal and state laws.  18 U.S.C. §1961(1).

7 A pattern, in turn, requires "at least two acts of racketeering activity" in a 10-year period, *id.* §1961(5),

8 that "are related, *and* . . . amount to or pose a threat of continued criminal activity."  *H.J. Inc. v. Nw.*

9 *Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  Isolated or "sporadic activity" is insufficient.  *Id.*

10       Here, Plaintiffs identify four predicate acts of racketeering allegedly committed by IUOE

11 Defendants: Hobbs Act extortion, 18 U.S.C. §1951; unlawful monetary transactions, *id.* §1957;

12 embezzlement of union assets, 29 U.S.C. §501(c); and embezzlement from employee benefit plans, 18

13 U.S.C. §664.  None of these purported acts of racketeering are supported by plausible factual

14 allegations, and the alleged embezzlement predicates also fail for lack of a viable legal theory.

15                **1.      Plaintiffs' conclusory allegations of extortion fail to satisfy the standard of**
                ***Iqbal* and *Twombly* and cannot support plausible Hobbs Act violations**
16

17       The Hobbs Act defines extortion as "the obtaining of property from another, with his consent,

18 induced by wrongful use of actual or threatened force, violence, or fear, or under color of official

19 right."  18 U.S.C. §1951(b)(2); *see also United States v. McFall*, 558 F.3d 951, 956 (9th Cir. 2009).

20 Threats of economic harm constitute extortion under the Hobbs Act only if the economic harm

21 threatened is unlawful, *United Bhd. of Carpenters & Joiners v. Bldg. & Const. Trades Dep't*, 911

22 F.Supp.2d 1118, 1129 (E.D. Wash. 2012); the defendant intended to instill or exploit fear in the

23 plaintiff, *Carbo v. United States*, 314 F.2d 718, 740-41 (9th Cir. 1963); and the plaintiff's fear of

24 economic loss is objectively reasonable.  *See, e.g.*, *Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty.*,

25 424 F.3d 659, 663, 672 (7th Cir. 2005) (contractor's subjective feeling of intimidation and pressure to

26 buy tickets to sheriff's fund raiser from uniformed police officers "openly displaying badge and gun"

27 was insufficient to support claim of extortion).

28       Plaintiff Slack's allegations of extortion come nowhere close to stating a plausible Hobbs Act

violation.  Despite his repeated assertions that he and other non-clerical Local 3 employees were "forced" to make political contributions "under the threat of adverse economic consequences," FAC ¶105, he does not identify a single threat made by *any* individual, much less by any IUOE Defendant. Instead, Plaintiff Slack vaguely asserts that he and other Local 3 employees "were told and/or made otherwise aware," by some unidentified person, that they "had no choice but to contribute" if they wanted to serve in their positions.  *Id.*  Although the facts are plainly within Plaintiff Slack's knowledge, he does not specify what he or any other employee was told (or how they were "made otherwise aware"), who told them (or made them "otherwise aware"), or under what circumstances they experienced a "threat of adverse economic consequences."  *Id.*  Nor does Plaintiff Slack identify any instance in which an employee experienced adverse consequences based on a failure or refusal to contribute.  His vague allegations, unattributed to any individual actor and devoid of factual support, are far from sufficient to raise a reasonable inference that IUOE Defendants used threats of any kind – let alone threats that could instill or exploit an objectively reasonable fear of job loss in individuals not employed by IUOE Defendants – to induce him, or any other employee, to make political contributions.  For this reason, Plaintiff Slack does not state a plausible predicate act of Hobbs Act extortion.  *See, e.g.*, *Iqbal*, 556 U.S. at 678 ("naked assertions devoid of further factual enhancement" do not suffice) (internal quotation marks and brackets omitted); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 939 (9th Cir. 2012) ("vague allegations with no factual support" are insufficient to defeat a motion to dismiss).

Nor does Plaintiff Slack plausibly allege that IUOE Defendants directed local officers to extort contributions through threats of economic consequences.  With respect to former General President Giblin, Plaintiffs allege only that he told certain members of IUOE's General Executive Board ("GEB") that non-clerical local union employees would be required to contribute to the political action fund.  FAC ¶106.[3]  Even assuming the truth of this allegation, Plaintiffs do not allege that Mr. Giblin directed GEB members to use threats or fear to obtain contributions.  Similarly, Plaintiffs' allegation,

---

[3] Plaintiffs allege that Mr. Giblin made this statement in 2008, outside the limitations period for Plaintiffs' RICO claim.  *See Rotella v. Wood*, 528 U.S. 549, 553 (2000) (civil RICO claims subject to 4-year statute of limitations).

1   "on information and belief," that IUOE and other non-Defendants attempted to monitor contributions,

2   FAC ¶¶108-09, says nothing about threats and is consistent with an IUOE effort to persuade employees

3   lawfully to contribute.[4/]  These allegations simply do not "contain facts plausibly showing" that Mr.

4   Giblin played any role in extorting political contributions from Plaintiff Slack or any other local union

5   employee.  *Iqbal*, 556 U.S. at 682.  Plaintiffs cannot make up for this deficiency through cryptic

6   assertions that "Mr. Giblin left no room for doubt . . . that local union employees had to comply or face

7   harsh consequences," FAC ¶106, or conclusory allegations that threats "were used[] at the direction of

8   IUOE and Giblin," *id.* ¶114.  *See, e.g.*, *Blantz v. California Dep't of Corr. & Rehab.*, 727 F.3d 917,

9   926-27 (9th Cir. 2013) (conclusory allegations that defendant directed others to take actions are

10   insufficient to state a claim).

11       With respect to General President Callahan, moreover, Plaintiffs make only the barest

12   allegations, "[o]n information and belief," that he continued Mr. Giblin's practice of requiring political

13   contributions when he became IUOE General President.  FAC ¶¶108, 114.  These allegations are no

14   more "than an unadorned, the-defendant-unlawfully-harmed-me accusation," unsupported by any *facts*

15   suggesting Mr. Callahan engaged in any specific acts to require contributions.  *Iqbal*, 556 U.S. at 678.

16   Plaintiffs' allegations therefore cannot support a plausible claim that Mr. Callahan extorted, or directed

17   others to extort, political contributions from Plaintiff Slack or any other local union employees.

18       Finally, despite Plaintiffs' repeated references to "extortion," "racketeering," and illegal

19   "schemes and artifices," their allegations do not suggest criminal Hobbs Act extortion, but, at most, the

20   run-of-the-mill pressure subjectively felt by employees whose employers have encouraged them to

21   participate in a voluntary activity.  To the extent that any local union employee felt pressured,

22   expected, or required to contribute to IUOE's political action fund (which is not plausibly alleged and

23   which IUOE Defendants do not concede), this would not rise to the level of a Hobbs Act violation.

24

25

26   _____

27       [4/] Plaintiffs allege only one example of non-Defendant James Van Dyke purportedly calling a
local union officer regarding political contributions from local union employees.  That example does
28   not involve Local 3 (of which Mr. Slack is a member), but an entirely different local union (Local 501).
FAC ¶108.

Notice of Motion and Motion to Dismiss; Memorandum of Points and Authorities
Case No. CV 13-05001-EMC

1  Instead, such an allegation could, at most, raise a question of whether Federal Election Commission

2  ("FEC") rules regarding union solicitation of political contributions were violated.[5/]

3       Pursuant to the Federal Election Campaign Act ("FECA"), the FEC closely regulates the

4  manner in which unions solicit political contributions from their members and employees, to ensure

5  that all contributions are voluntary and not coerced.  *See, e.g.*, 2 U.S.C. §441b(b)(3) (prohibiting

6  contributions secured by threat of "job discrimination" or "financial reprisals" and requiring

7  disclosures regarding the right to refuse to contribute); 11 C.F.R. §114.2(f)(2)(iv) (prohibiting unions

8  and union officers from "[u]sing coercion, such as the threat of a detrimental job action, [or] the threat

9  of any other financial reprisal" to obtain political contributions); 11 C.F.R. §114.5(a)(2), (a)(4)-(5)

10  (requiring specific disclosures to ensure that contributions are voluntary and prohibiting a union from

11  "enforc[ing] any guideline for contributions").  FECA provides a comprehensive administrative

12  enforcement scheme for alleged violations of the Act, *see* 2 U.S.C. §437g, and grants the FEC

13  "exclusive jurisdiction with respect to the civil enforcement of [FECA's] provisions."  *Id.* §437c(b)(1);

14  *see also id.* §437d(e) ("the power of the Commission to initiate civil actions . . . shall be the exclusive

15  civil remedy for the enforcement of the provisions of this Act"); *Nat'l Comm. of Reform Party v.*

16  *Democratic Nat'l Comm.*, 168 F.3d 360, 364 (9th Cir. 1999) ("The FEC's power to sue violators is the

17  'exclusive civil remedy' for enforcement of the Act").  Any allegation that local union employees were

18  coerced or required to contribute to IUOE's political action fund is properly addressed by the FEC, and

19  should not be shoehorned into claims of racketeering and Hobbs Act extortion.

20

21

22

23      [5/]  Plaintiffs' original Complaint alleged that the contribution requirement was "in violation of
the Federal Election Campaign Act and Federal Election Commission rules."  Compl. ¶94.  Plaintiffs
24  omitted this allegation in the First Amended Complaint, which was filed after IUOE asserted FECA
preemption of state law claims in the *Salas* case.  *See Salas*, *supra*, Dkt. Nos. 114 & 158.  But there is
25  no dispute that the EPEC fund is a federal political committee regulated by the FEC.  *See* FAC ¶116
(alleging EPEC/the President's Club contributes to members of Congress); *see also*
26  http://docquery.fec.gov/cgi-bin/com_detail/C00029504/ (identifying "Engineers Political Action
Committee (EPEC)/International Union of Operating Engineers" by FEC Committee ID number);
27  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (court may take judicial notice
of information made publicly available on government website).
28

9

**2.      Plaintiffs' conclusory allegations cannot support a plausible predicate act of unlawful monetary transactions**

To establish a predicate act of money laundering or unlawful monetary transactions under 18 U.S.C. §1957, a plaintiff must show "(1) the defendant knowingly engaged in a monetary transaction; (2) he knew the transaction involved criminal property; (3) the property's value exceeded $10,000; and (4) the property was derived from a specified unlawful activity." *United States v. Rogers*, 321 F.3d 1226, 1229 (9th Cir. 2003).  Plaintiff Slack alleges that the "forced" EPEC contributions constitute property derived from a specified unlawful activity under 18 U.S.C. §1957(f)(3) because the contributions were extorted in violation of the Hobbs Act.  FAC ¶¶404-05.  Mr. Slack further alleges that IUOE Defendants knew that these EPEC contributions involved criminal property because IUOE Defendants "conceived of the plan to force contributions . . . with threats of termination" and directed others to terminate local union employees who refused to contribute.  FAC ¶404.

As shown above, however, Plaintiffs have not plausibly alleged that any person induced Plaintiff Slack, or any other local union employee, to make EPEC contributions under threat of economic harm, as required to state a Hobbs Act violation.  *See supra* at 6-9.  Moreover, because Plaintiffs have not plausibly alleged that any IUOE Defendant directed or encouraged local union officers to use threats of termination or other economic harm to obtain political contributions, there is no reasonable basis to infer that any IUOE Defendant had knowledge that EPEC contributions might involve "criminal property."  *See supra* at 7-8.  For this reason, Plaintiffs have not adequately alleged that the EPEC contributions were derived from a specified unlawful activity, or that IUOE Defendants had knowledge that the contributions were criminal property, and they cannot establish a predicate act of unlawful monetary contributions.[6/]

The First Amended Complaint also fails to plausibly establish that any individual monetary transaction involved contributions exceeding $10,000.  18 U.S.C. §1957(a) (requiring "a monetary transaction in criminally derived property of a value greater than $10,000").  Plaintiffs identify only one local union employee (Plaintiff Slack) who allegedly made contributions under threat of adverse

---

[6/] To the extent Plaintiff Slack alleges a separate violation of 18 U.S.C. §1956, *see* FAC ¶¶402-05, 408, it is not plausibly alleged for the same reasons.

1    economic consequences within the statute of limitations.  FAC ¶105; *see also supra* at 3 n.2, 7 n.3.[2/]

2    Plaintiff Slack alleges that he was required to contribute in an amount of "up to $800 per year."  FAC

3    ¶105.  Based on this allegation, any transaction involving "forced" contributions from Mr. Slack would

4    have involved at most $800.  Accordingly, Plaintiffs have not plausibly alleged a transaction involving

5    criminally derived property of a value greater than $10,000, and they cannot allege a plausible

6    predicate act of unlawful monetary transactions.

### 3.   The alleged predicate act of embezzlement of union assets is unsupported by plausible factual allegations and lacks a cognizable legal theory

8        Plaintiffs also allege a predicate act of embezzlement of union assets, in violation of 29 U.S.C.

9    §501(c).  Section 501(c) makes it unlawful for any person to embezzle, steal, or convert the assets of a

10   labor organization "of which he is an officer, or by which he is employed, directly or indirectly."  29

11   U.S.C. §501(c).  Plaintiffs contend that IUOE Defendants violated §501(c) by using threats to require

12   political contributions from employees who were paid with local union assets.  FAC ¶406.

13       This claim fails, as an initial matter, because there are no plausible allegations that IUOE

14   Defendants used threats to obtain political contributions, as shown above.  *See supra* at 6-8.

15       Moreover, Plaintiffs' legal theory is not viable.  Wages paid to union employees implicate

16   §501(c) only where those wages should have remained union assets and could not lawfully be paid to

17   the employee, such as when an employee receives unlawful salary increases, *United States v. Int'l Bhd.

18   of Teamsters*, 14 F.3d 183, 185 (2d Cir. 1994), or an officer makes "fictitious salary payments to

19   persons who performed no services," *United States v. Brill*, 350 F.2d 171, 172 (2d Cir. 1965).  Absent

20   such circumstances, a union employee's bona fide wages are his personal property to be used in any

21

22

23

24       [2/] Although Plaintiffs estimate (based on undisclosed information) that contributions from local employees exceed $2.5 million per year, Plaintiffs plead no facts from which the Court can reasonably

25   infer that these contributions resulted from Hobbs Act violations.  FAC ¶112.  The more plausible explanation is that local union employees voluntarily responded to a campaign to increase

26   contributions to a political action fund created to further their interests.  *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (where there are two possible explanations,

27   "plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation.  Something more is needed, such as facts tending to

28   exclude the possibility that the alternative explanation is true.") (quoting *Iqbal*, 556 U.S. at 678).

11

1    manner the employee sees fit.  *See id.* at 174 (indicating that union employee's bona fide salary may be

2    used in "any manner he or she may see fit").

3          Here, Plaintiffs repeatedly allege that the political contributions were taken out of the wages

4    and personal property of Plaintiff Slack and other proposed class members.  *See, e.g.*, FAC ¶¶105

5    (alleging requirement that employees contribute one percent of their salaries), 398 (describing

6    contributions as "[w]ages paid to [class] members" that "represent their personal, tangible assets").

7    Assuming these allegations to be true, any "forced" contributions were taken from Plaintiffs' bona fide

8    wages, not from union assets, and §501(c) is not implicated.

9          Indeed, if political contributions were taken from union assets that were never intended to be

10   part of Plaintiffs' bona fide wages (as Plaintiffs appear to allege, FAC ¶406), then Plaintiff Slack

11   would lack statutory standing to bring his RICO claim.  Under 18 U.S.C. §1964(c), a private plaintiff

12   may bring suit only if he has been "injured in his business or property by reason of a violation of"

13   RICO.  A private plaintiff must demonstrate "concrete financial loss" involving "a specific business or

14   property interest," *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008) (internal

15   quotation marks omitted), and there must be a "direct relationship" between the injury asserted and the

16   racketeering activities alleged.  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). "[P]otential

17   plaintiffs who have suffered 'passed-on' injury—that is, injury derived from a third party's direct

18   injury—lack statutory standing."  *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168-69 (9th Cir.

19   2002).

20         To the extent Plaintiff Slack alleges (again, without plausible factual allegations) that IUOE

21   Defendants embezzled or converted *union* assets for use as political contributions, he alleges a direct

22   injury only to the union and its property.  *See United Bhd. of Carpenters & Joiners*, 911 F.Supp.2d at

23   1125 (injury must be to property that "belong[s]" to plaintiffs).  The injury – if any – to Plaintiff Slack

24   and the proposed class would be both derivative and speculative.  *See Pette*, 2013 WL 5573043, at *3

25   & n.4 (holding that union members lacked standing to bring RICO action based on monetary losses to

26   local union because any injury to plaintiffs was indirect and speculative).  For this reason, under

27   Plaintiffs' theory of union asset embezzlement, Plaintiff Slack would lack standing to bring his RICO

28   claim.  *See id.*; *Adams-Lundy v. Ass'n of Prof'l Flight Attendants*, 844 F.2d 245, 250 (5th Cir. 1988)

1    (union members lacked RICO standing where "[a]ny financial improprieties occurred with union funds

2    and directly injured solely the union"); *cf. Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 640-41 (9th

3    Cir. 1988) (corporation's sole shareholders and guarantors lacked RICO standing because their injuries

4    derived from the direct injury to the corporation).

5         Finally, Plaintiffs also cannot allege a plausible §501(c) violation because no IUOE Defendant

6    is an officer of Local 3 or employed, directly or indirectly, by Local 3.  *See* 29 U.S.C. §501(c) (making

7    it unlawful for a person to embezzle, steal, or unlawfully convert any "assets of a labor organization *of*

8    *which he is an officer, or by which he is employed, directly or indirectly*") (emphasis added).

9                    **4.    The alleged predicate act of embezzlement from employee benefit plans
                            fails because Plaintiffs have identified no plan employee, pleaded no
10                           plausible facts, and rely on a defective legal theory**

11        Plaintiffs also allege a similar predicate act based on violations of 18 U.S.C. §664, which

12   prohibits the embezzlement or conversion of the assets of ERISA-governed pension or welfare plans.

13   As with the purported §501(c) violation, Plaintiffs contend that IUOE Defendants violated §664 by

14   using threats to require political contributions from employees who were paid with employee benefit

15   plan assets.  FAC ¶407.  This alleged predicate act fails for the many of the same reasons as Plaintiffs'

16   §501(c) allegation: because there are no plausible allegations that contributions were obtained through

17   threats or fear, because the contributions are alleged to have been made directly from employees' bona

18   fide and lawful wages rather than from plan assets, and because Plaintiffs would lack RICO standing

19   under their theory of embezzlement.  *See supra* at 11-13; *United States v. Andreen*, 628 F.2d 1236,

20   1242 (9th Cir. 1980) (explaining that 29 U.S.C. §501(c) and 18 U.S.C. §664 are "given similar

21   interpretation and  . . . applied to similar types of conduct," and §501(c) cases "appl[y] equally" to

22   §664).

23        In addition, Plaintiffs have not identified a single employee of any ERISA-governed pension or

24   welfare plan who was forced to make contributions to IUOE's political action fund.  *See* FAC ¶119

25   (alleging that Plaintiff Slack "was forced to contribute to EPEC *as an employee of Local 3*") (emphasis

26   added).  Without plausible allegations that identifiable pension or welfare plan employees were forced

27   to make political contributions, Plaintiffs plainly cannot establish a viable predicate act of

28   embezzlement from an employee benefit plan.

1        For all of these reasons, Plaintiffs have not plausibly alleged a single predicate act by any IUOE

2 Defendant, and their RICO claim should be dismissed.

3        **B.**     **Plaintiffs Have Not Alleged A Pattern Of Racketeering**

4        Even if Plaintiffs' allegations amounted to predicate acts of extortion, unlawful monetary

5 transactions, or embezzlement (which they do not), Plaintiffs have not alleged that any IUOE

6 Defendant engaged in a *pattern* of racketeering sufficient to support a plausible RICO claim.

7        With respect to Mr. Giblin, Plaintiffs allege a *single* instance (outside the four-year statute of

8 limitations) in which he purportedly told certain members of the IUOE General Executive Board that

9 non-clerical local union employees would be required to contribute to EPEC/the President's Club.

10 FAC ¶105.  And Plaintiffs identify only a single local union employee (Plaintiff Slack) who was

11 allegedly forced to make contributions under threat of job loss during the limitations period.  *See supra*

12 at 3 n.2, 7 n.3.  Even if these general and conclusory allegations were assumed to be true (which would

13 be improper under *Iqbal*, *see supra* at 7-8), a single isolated statement alleged to have affected only

14 one identified employee cannot establish "a series of related predicates extending over a substantial

15 period of time," as required to show a pattern of racketeering in the past.  *H.J.*, 492 U.S. at 242.

16        With respect to Mr. Callahan, moreover, Plaintiffs offer only the conclusory assertion, on

17 information and belief, that he required local unions to obtain political contributions from local union

18 employees when he became IUOE General President.  FAC ¶¶108, 114.  Plaintiffs plead no facts to

19 suggest how he implemented this alleged requirement, or to support a reasonable inference that he did

20 so at all.  Further, Plaintiffs' allegations with respect to Mr. Callahan pertain only to the time period

21 during which he served as IUOE General President, beginning in November 2011.  *See* FAC ¶13

22 (Callahan elected General President in 2011), ¶108 ("When Defendant James Callahan became the

23 IUOE's GP, he continued to require enforcement of the contribution mandate[.]"); ¶415(b) (alleging

24 Callahan mandated contributions "as General President").  But Mr. Slack was no longer a local union

25 employee in 2011, *id.* ¶7, and the First Amended Complaint names no other employees who were

26 allegedly required to contribute during the four years proceeding the filing of the complaint.  *See supra*

27 at 3 n.2.  Plaintiffs therefore have identified no employees who supposedly were required to make

28 political contributions during Mr. Callahan's tenure as General President, let alone multiple victims of

1   related and continuous criminal acts.  *See H.J. Inc.*, 492 U.S. at 240.  Absent such allegations,

2   Plaintiffs cannot plausibly establish either a past series of related predicate acts of racketeering or

3   conduct by Mr. Callahan that "involve[s] a distinct threat of long-term racketeering activity"

4   continuing into the future.  *Id.*

5           **C.        Plaintiffs Have Not Alleged Operation Or Management Of A RICO Enterprise**

6           Plaintiffs' RICO claim is also deficient because it fails to adequately allege that IUOE

7   Defendants "participate in the operation or management" of a RICO enterprise, as required to state a

8   claim under §1962(c).  *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).  Plaintiffs allege two

9   RICO enterprises: the EPEC fund and "IUOE and its associated EPEC fund, collectively."  FAC

10  ¶¶392-93.  Because IUOE and EPEC are "associated in fact although not a legal entity," 18 U.S.C.

11  §1961(4), the alleged enterprise of "IUOE and its associated EPEC fund" must satisfy the requirements

12  for an associated-in-fact enterprise under RICO.  *See Boyle v. United States*, 556 U.S. 938, 944-45

13  (2009); *Odom v. Microsoft Corp.*, 486 F.3d 541, 548, 552 (9th Cir. 2007).  Specifically, such an

14  enterprise requires "evidence of an ongoing organization, formal or informal" and "evidence that the

15  various associates function as a continuing unit" for "a common purpose of engaging in a course of

16  conduct."  *Boyle*, 556 U.S. at 944-45 (internal quotation marks omitted); *see also id.* ("an association-

17  in-fact enterprise must have at least three structural features: a purpose, relationships among those

18  associated with the enterprise, and longevity sufficient to permit these associates to pursue the

19  enterprise's purpose").  The First Amended Complaint, however, provides no indication of whom or

20  what the IUOE/EPEC enterprise is alleged to encompass, how it is organized, or how it functions as a

21  "continuing unit."

22          Similarly, Plaintiffs fail to adequately allege IUOE Defendants' relationship to the two

23  enterprises.  To state a claim against IUOE Defendants, Plaintiffs must plausibly allege that IUOE

24  Defendants are "employed by or associated with" the RICO enterprise, 18 U.S.C. §1962(c) and that

25  they "participate in the operation or management" of the enterprise, meaning that they have some "part

26  in directing the enterprise's affairs."  *Reves*, 507 U.S. at 179, 185.  IUOE Defendants are not alleged to

27  have been employed by either the EPEC fund or the alleged EPEC/IUOE associated-in-fact enterprise,

28  and Plaintiffs do not allege facts indicating what role, if any, IUOE Defendants played in directing the

affairs of these purported enterprises.  Absent such facts, the Court has no basis for concluding that IUOE Defendants participated in the operation or management of a RICO-defined enterprise. Plaintiffs' RICO claim should be dismissed on this ground as well.

### D.     Plaintiffs Lack Statutory Standing To Bring A RICO Claim Against Current IUOE General President Callahan

Finally, the RICO claim against current IUOE General President Callahan fails for the additional reason that Plaintiff Slack lacks statutory standing to bring a RICO claim against him.  To establish statutory standing to sue under RICO, a private plaintiff must show that he has been "injured in his business or property," 18 U.S.C. §1964, and that there is a "direct relationship" between the injury asserted and the racketeering activities alleged.  *Hemi Grp.*, 559 U.S. at 9.  Plaintiff Slack's RICO claim is based on the allegation that he "was forced to contribute to EPEC *as an employee of Local 3*."  FAC ¶119 (emphasis added).  As discussed above, however, Defendant Callahan is alleged to have required contributions only in his capacity as IUOE General President, and Plaintiff Slack was not employed by Local 3 at any time during Mr. Callahan's tenure as General President.  *See supra* at 14-15.  For this reason, Mr. Slack cannot establish any relationship – and certainly not the direct relationship required – between the alleged injury to his property (that is, his "forced" monetary contributions) and the racketeering activities allegedly undertaken by Mr. Callahan.  Mr. Slack therefore lacks statutory standing to bring a RICO claim against Mr. Callahan, and the claim against Mr. Callahan should be dismissed for this additional reason.

## II.     THE CLAIM AGAINST DEFENDANT CALLAHAN SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(1) BECAUSE NO PLAINTIFF HAS ALLEGED AN INJURY TRACEABLE TO HIS CONDUCT

Although the First Amended Complaint names current IUOE General President James Callahan as a defendant, no named plaintiff alleges any injury that can be fairly traced to his alleged conduct.  Plaintiffs thus lack standing to pursue the claim against Mr. Callahan, and he should be dismissed from this lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(1).

"'The irreducible constitutional minimum of standing contains three elements,' all of which the party invoking federal jurisdiction bears the burden of establishing."  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560-61 (1992)) (internal brackets omitted).  To pursue their claims in federal court, Plaintiffs must establish (1) that they "have suffered an injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) that there is "a causal connection between the injury and the conduct complained of" such that the injury is "fairly . . . traceable to the challenged action of the defendant"; and (3) that it is "likely . . . that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (internal brackets, quotation marks, and citations omitted).

That Plaintiffs filed their lawsuit as a proposed class action does not affect the standing analysis. *Lee v. State of Or.*, 107 F.3d 1382, 1390 (9th Cir. 1997).  "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks omitted).  Thus, in a proposed class action brought against multiple defendants, at least one named plaintiff must allege an injury that is fairly traceable to the challenged action of each defendant. *See Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1113 (9th Cir. 2013) (named plaintiffs alleging claims based on use of unapproved lasers for eye surgery lacked standing to bring claims against doctors who used the lasers only on unnamed class members).

Of the five named Plaintiffs in this action, only Plaintiff Slack asserts any claim against James Callahan and the other IUOE Defendants.  FAC ¶390; *see also supra* at 2-3 & n.2.  His claim is premised on allegations that non-clerical local union employees were forced to make contributions to IUOE's political action fund under threat of job loss or other adverse consequences if they refused. FAC ¶¶16, 105-19.  Plaintiff Slack further alleges that he was an employee of Local 3 "up until and including 2009," and that he is now retired. *Id.* ¶7.

Taking these allegations as true, Plaintiff Slack alleges no injury that can be fairly traced to any conduct by current General President Callahan.  As discussed above, Plaintiffs allege that Mr. Callahan required contributions in his role "as General President." *Id.* ¶400(b); *see also id.* ¶108 ("When Defendant James Callahan became the IUOE's GP, he continued to require enforcement of the contribution mandate[.]").  But Mr. Callahan did not become General President until November 2011,

1   long after Plaintiff Slack ended his employment with Local 3.  *Id.* ¶13.  Because Plaintiff Slack was

2   not employed by a local union during the period when Mr. Callahan allegedly required contributions

3   from local union employees, Plaintiff Slack cannot trace any "forced" contribution or any threat of

4   termination to Mr. Callahan's alleged misconduct.  He thus cannot establish any "causal connection"

5   between his claimed injury and the alleged conduct of Mr. Callahan.  *Lujan*, 504 U.S. at 560.  For this

6   reason, Plaintiffs lack standing to assert their claims against Mr. Callahan, and he should be dismissed

7   from the lawsuit.

8   **III.   PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF SHOULD BE STRICKEN**

9        If the Court does not dismiss the RICO claim against IUOE Defendants in its entirety, IUOE

10  Defendants request that the Court strike Plaintiffs' request for injunctive relief as it pertains to IUOE

11  Defendants, on the ground that Plaintiffs lack standing to seek such relief.

12       A defendant may to strike from a pleading "any redundant, immaterial, impertinent, or

13  scandalous matter."  Fed. R. Civ. P. 12(f).  The purpose of a motion to strike "is to avoid the

14  expenditure of time and money that must arise from litigating spurious issues by dispensing with those

15  issues prior to trial."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation

16  marks omitted), *rev'd on other grounds*, 510 U.S. 517 (1994).  Such a motion "may be used to strike

17  requests for relief that is unavailable as a matter of law."  *Amparan v. Plaza Home Mortgage, Inc.*, 678

18  F.Supp.2d 961, 967 (N.D. Cal. 2008); *Howard v. Blue Ridge Bank*, 371 F.Supp.2d 1139, 1146 (N.D.

19  Cal. 2005) (granting motion to strike references to injunctive relief).

20       It is black letter law that in a proposed class action, at least one named plaintiff "must show

21  standing with respect to each form of relief sought."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970,

22  978 (9th Cir. 2011).  If a plaintiff lacks standing to pursue injunctive relief on his own behalf, he

23  cannot seek injunctive relief on behalf of a proposed class, even if he has standing to seek damages for

24  past injuries. *See, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 493-98 (1974); *Nelsen v. King Cnty.*, 895

25  F.2d 1248, 1250 (9th Cir. 1990).  "Past exposure to illegal conduct does not in itself show a present

26  case or controversy regarding injunctive relief."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)

27  (internal quotation marks and alteration omitted).  Rather, the plaintiff must "show a credible threat of

28  future injury." *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 992 (9th Cir. 2012).

1      In this case, Plaintiff Slack asserts a RICO claim against IUOE Defendants based on allegations that he was forced to contribute a portion of his salary to IUOE's political action fund while employed by Local 3. FAC ¶¶105, 119. As discussed above, Plaintiff Slack alleges that he was employed by Local 3 "up until and including 2009," and that he is now reitred. *Id.* ¶7. Because Plaintiff Slack is no longer employed by Local 3, he faces no "credible threat of future injury," *Ibrahim*, 669 F.3d at 992, from the alleged requirement that local union employees make political contributions. Nor will he benefit from an injunction prohibiting Defendants from requiring contributions from employees at his former place of work. *See Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (former employee lacked standing to seek injunctive relief because she did "not stand to benefit from an injunction requiring the anti-discriminatory policies she requests at her former place of work"). Plaintiff Slack therefore lacks standing to seek injunctive relief, and Plaintiffs' request for injunctive relief (FAC ¶506) as to IUOE Defendants should be stricken.

## CONCLUSION

      Plaintiff Slack should not be permitted to bring a quasi-criminal claim against IUOE Defendants based on threadbare assertions that have nothing to do with criminal racketeering and are more properly addressed, if at all, by the Federal Election Commission. Accordingly, for the reasons set forth above, IUOE Defendants respectfully request that the Court dismiss the claims against IUOE Defendants in their entirety or, in the alternative, strike Plaintiffs' request for injunctive relief.

Dated: April 24, 2014                Respectfully submitted,

STEPHEN P. BERZON
JONATHAN WEISSGLASS
STACEY M. LEYTON
LAURA S. TRICE


By:  */s/  Stacey Leyton*
      Stacey Leyton

*Attorneys for Defendants International Union of Operating Engineers, James T. Callahan, and Vincent Giblin*